UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK ALAN CARLSON,

                Plaintiff,

       v.

JAMIESON PARRY,

           Defendant.
_____

<u>DECISION & ORDER</u>

06-CV-6621P

## <u>PRELIMINARY STATEMENT</u>

On December 13, 2006, Mark Alan Carlson ("Carlson") filed this action against the New York State Department of Correctional Services ("DOCS") and certain of its officers at Livingston Correctional Facility, alleging that the defendants violated his rights under the First, Eighth and Fourteenth Amendments, as well as his rights under the Americans with Disabilities Act and the Rehabilitation Act.[1]  (Docket # 1).  Following resolution of the defendants' summary judgment motion, Carlson's sole remaining cause of action was his claim for deliberate indifference against defendant Jamieson Parry ("Parry") under 42 U.S.C. § 1983.  (Docket # 66).

After a three-day trial, a jury returned a verdict in favor of Parry on January 16, 2013.  (Docket # 80).  Currently pending before the Court is Carlson's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.  (Docket # 88).  For the reasons discussed below, Carlson's motion for a new trial is denied.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all further proceedings in this case, including the entry of final judgment.  (Docket # 28).

# FACTUAL BACKGROUND

## I. Procedural History

Carlson commenced this action against Parry claiming that Parry was deliberately indifferent to Carlson's health or safety while he was incarcerated at Livingston Correctional Facility ("Livingston") in 2005. (Docket # 33 at ¶¶ 1-56). Parry, who was employed at Livingston as the Senior Corrections Counselor in 2005, denied that he was deliberately indifferent to Carlson's health or safety and asserted various affirmative defenses, including Carlson's alleged failure to exhaust his administrative remedies. (Docket # 34 at ¶¶ 18-19).

Prior to the trial, Parry filed a motion seeking dismissal of Carlson's claim on the grounds that he had failed to exhaust his administrative remedies because he had never filed a grievance concerning Parry's alleged conduct. (Docket # 70). Carlson opposed the motion, contending that he was excused from exhausting his administrative remedies through the grievance process. (Docket # 73). Specifically, Carlson asserted that he did not grieve Parry's conduct because he felt threatened and feared retaliation. (Docket # 74 at ¶¶ 39-42). According to Carlson, his concerns were two-fold: (1) Parry had the ability to assign him to harsh work assignments and (2) Parry had made a statement that Carlson interpreted to be a "direct threat of bodily injury." (*Id.* at ¶¶ 39-45).

The Court denied the exhaustion motion. Specifically, the Court determined that a ruling on exhaustion would require the Court to make factual findings that were intertwined with the merits of Carlson's deliberate indifference claim. Accordingly, the Court concluded that the exhaustion defense should be submitted to the jury along with the deliberate indifference claim.

A trial was conducted between January 14, 2013 and January 16, 2013. (Docket ## 81, 82, 83, 84). On the first day of the trial, prior to jury selection, the Court conducted a conference with the parties outside the presence of the jury. (Tr. at 7).[2] During that conference, counsel for Carlson confirmed the Court's understanding that Carlson's evidence relating to exhaustion would be limited to facts supporting "the view that . . . Parry's conduct and statements amounted to threats or intimidation such that a person of ordinary firmness would have been deterred from filing a grievance." (*Id.*). The parties agreed that with respect to the exhaustion issue, the jury would need to answer only a single question on the verdict form regarding whether "threats or intimidation effectively made the grievance process unavailable." (*Id.*).

Following jury selection, outside the presence of the jury and prior to Carlson's direct testimony, counsel for Carlson alerted the Court to a potential evidentiary issue. (Tr. 101). Specifically, Carlson's counsel informed the Court that he intended to elicit testimony from Carlson regarding the reasons for Carlson's failure to file a grievance with respect to Parry's conduct. Counsel indicated that he expected Carlson would testify that part of the reason that Carlson was intimidated from filing a grievance was that Carlson had witnessed or had knowledge of retaliation inflicted on other inmates who had filed grievances against other officers. (*Id.*). Carlson's counsel conceded that such testimony would not include evidence of Carlson's knowledge of any actions taken by Parry against other inmates, but would relate solely to actions other officers took against other inmates. (Tr. 102). Counsel for Parry objected to the testimony on the grounds that Carlson had failed to assert such facts in his affidavit in opposition

---

[2] The transcript of the trial testimony shall be referred to as "Tr. __." (Docket ## 95, 96, 97).

3

to Parry's exhaustion motion. (Tr. 101-02). In addition, counsel for Parry contended that the testimony would likely involve hearsay and that it would be improper under the equitable doctrine of estoppel to impute other officers' conduct to Parry. (Tr. 102).

The Court determined to exclude the proposed testimony on two grounds. First, the testimony was excluded on the grounds that Carlson had failed to allege such facts in opposition to defendant's exhaustion motion and it was "too late" to do so after the commencement of the trial. (Tr. 102-03). Second, the Court concluded that testimony regarding mistreatment or retaliation suffered by other inmates at the hands of other officers involving unrelated grievances was too attenuated, as a matter of law, to support a finding that the grievance process was unavailable to Carlson because he felt threatened or intimidated. (Tr. 103-04). For that reason, the Court determined that the testimony was also irrelevant. (Tr. 104).

At the conclusion of the trial, the jury was provided a verdict form. (Docket # 80). The first question on the verdict sheet provided:

<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

1.    Do you find that plaintiff Carlson has proven by a preponderance of the evidence that defendant Parry's statements or conduct towards him amounted to threats or intimidation that would have caused a person of ordinary firmness who was similarly situated to Carlson to be deterred from filing a grievance about Parry's treatment of him?

YES _____          NO _____

If you answered "yes" to Question #1, please answer Question #2. If you answered "no" to Question #1, you are

now finished.  Please sign and date the Verdict Form and
return your verdict to the Court.

(*Id.* at 1).  The verdict returned by the jury answered this question in the negative and, in

accordance with the Court's instructions, answered no additional questions.  (*Id.*).  Judgment was

entered in favor of Parry.  (Docket # 85).

Carlson now seeks a new trial on two grounds.  (Docket # 88).  First, Carlson

contends that the Court erred by excluding evidence that Carlson had witnessed "instances of

retaliation by prison officials against inmates who had filed grievances against a prison official."

(Docket # 88-2 at 2).  According to Carlson, such information was relevant to allow the jury to

assess whether an inmate who was "similarly situated" to Carlson would have been intimidated

from filing a grievance with respect to Parry's conduct.  (*Id.* at 4).  Second, Carlson contends that

the jury's verdict that a person of ordinary firmness who was similarly situated to Carlson would

not have been deterred from filing a grievance was against the weight of the evidence.  (*Id.* at 5).

According to Carlson, the evidence concerning Carlson's disability, his pain, his inability to

walk, his vulnerability and Parry's vindictiveness could lead only to the conclusion that a person

under such circumstances would have been too intimidated to file a grievance.  (Docket # 88-1 at

¶ 15).

Parry opposes the motion on three grounds.  First, Parry contends that Carlson

failed to preserve his objection to the exclusion of the evidence for subsequent review.  (Docket

# 90 at 2).  According to Parry, Rule 103 of the Federal Rules of Evidence provides that in order

to preserve an objection to the exclusion of evidence at trial, a party must make a formal offer of

proof.  (*Id.* at 3).  Carlson's failure to do so, Parry maintains, precludes meaningful review and

warrants denial of his request for a new trial. (*Id.* at 4). In addition, Parry contends that even if the exclusion of the proposed testimony was error, such error was harmless and therefore not grounds to warrant a new trial. (*Id.* at 4-5). According to Parry, there was substantial evidence to allow the jury to conclude that an inmate under the circumstances faced by Carlson would not have been intimidated from filing a grievance, particularly where the evidence showed that Carlson submitted grievances on other issues during the same time period. (*Id.* at 4-5). Finally, Parry asserts that the verdict was not against the weight of the evidence. (*Id.* at 5-6). According to Parry, the verdict was supported by substantial evidence and was based on credibility determinations by the jury. (*Id.*). In Parry's view, the jury's rejection of Carlson's version of the events does not constitute grounds for a new trial.

In reply, Carlson contends that while his counsel may not have used the term "offer of proof" during the trial, his counsel adequately conveyed to the Court the substance of the proposed testimony regarding Carlson's knowledge of retaliation inflicted on other inmates by other corrections officers. (Docket # 91 at ¶ 2). Further, Carlson contends the Court asked questions regarding the proposed testimony, and defense counsel had a full opportunity to respond. (*Id.*). Thus, according to Carlson, the objection was properly preserved on the record and, in any event, the substance of the proposed testimony was apparent from the context and a formal offer of proof was thus not required. (Docket # 92).

During oral argument on this post-trial motion, counsel for Carlson made a formal offer of proof. He indicated that Carlson was prepared to testify that several inmates suffered retaliation after filing grievances directed against prison officials. The retaliation took a variety of forms, including the planting and subsequent discovery of contraband in the inmates' personal

areas, loss of good time, and placement in solitary confinement. According to Carlson's counsel, Carlson's knowledge concerning the retaliation derived from his personal observations and through conversations with other inmates.

## II. Evidence Relating to Exhaustion

During the trial, both parties submitted evidence of the circumstances surrounding Parry's conduct and Carlson's failure to file any grievances relating to that conduct. The pertinent evidence is summarized below.

The parties entered into a stipulation regarding the grievance procedures at Livingston and Carlson's knowledge of those procedures. The stipulation, which was read to the jury, provided as follows:

> The parties hereby stipulate that as of July 15, 2005, the plaintiff, Mark Alan Carlson, was aware that Livingston Correctional Facility had a grievance procedure which allowed inmates to challenge certain actions of the Livingston staff, including the assignment of inmate programs, work assignments and treatment of medical conditions. It is further stipulated that the plaintiff did not file a grievance regarding the actions of Jamieson Parry.

(Tr. 223-24).

Carlson testified that he first met Parry on July 23, 2005, approximately nine days after his transfer to Livingston. (Tr. 127). At the time, Parry was the Senior Corrections Counselor at Livingston and was the head of the program committee, which was responsible for assigning inmates to therapeutic, educational and work-related programs during their incarceration. (Tr. 127, 248-50, 253-56). Carlson met with Parry and an unidentified corrections employee to discuss appropriate program assignments for Carlson. (Tr. 128-29). According to

Carlson, Parry indicated that because of Carlson's conviction for driving while intoxicated, Carlson would be assigned to the ASAT program, which was a treatment program for drug and alcohol addiction. (Tr. 129, 246). Carlson testified that Parry also indicated that he would assign Carlson to work in the mess hall. (Tr. 129). According to Carlson, at that time he told Parry that he was experiencing pain in his leg and shoulder as result of a recent accident at his prior facility and adjustments to his new prosthetic leg. (Tr. 129-30). Carlson contends that he removed his prosthetic leg and showed Parry the areas on his leg that were irritated or "raw." (Tr. 130).

Carlson testified that in response Parry stated the following:

> I must be getting soft in my old age, because I'm willing to give
> you 30 days to get your medical bullshit straightened away. . . .
> Believe me when I tell you, if I don't see your name on every AA
> and NA sign-up sheet that we have in this prison within the next
> . . . for the next 30 days . . . I'll stick so many programs so far up
> your ass, you won't be able to sit down and visit with your mother
> when she comes to see you.

(*Id.*). Carlson further testified that he interpreted the statement as a direct order to attend Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") meetings and it caused him to be "scared to death" of Parry. (Tr. 130-31). After the July 23, 2005 meeting, Carlson began attending AA and NA meetings six nights a week. (Tr. 133). According to Carlson, he had to walk approximately 1400 yards round trip from his dorm to the building where the meetings were held. (Tr. 135-36). Carlson testified that he suffered injuries to the stump of his amputated leg as a result of the distance to and frequency of the meetings. (Tr. 136-37). He attended the meetings for approximately one month, but eventually became unable to walk the distance because of the injuries to his leg. (Tr. 137).

Carlson testified that he did not interact with Parry again until early September 2005.  (Tr. 140).  At the time, Carlson was in a borrowed wheelchair outside of the school building at Livingston.  (Tr. 140-42).  According to Carlson, Parry asked him whether he was still attending AA meetings.  (Tr. 143).  Carlson testified that he told Parry that his leg was too sore to walk to the meetings, but that he would resume his attendance after his leg healed or he was given his own wheelchair.  (*Id.*).  According to Carlson, Parry responded, "Don't worry about it.  I've got a good job for you."  (*Id.*).  Carlson testified that Parry might have said a "cushy job" instead of a "good job."  (*Id.*).  Carlson contends that the following day, September 15, 2005, he received a work assignment that assigned him to work in the Utility Gang, which involved maintenance of the outdoor areas at Livingston.  (Tr. 143-44, 295).

Carlson explained that he did not file a grievance against Parry because he was terrified of him as a result of the statement Parry made when instructing him to attend AA meetings and the "sadistic" manner in which Parry assigned him to the Utility Gang despite Carlson's physical limitations.  (Tr. 146).  According to Carlson, he wondered "what . . . [Parry] would . . . do to [him] if [he] filed a grievance on [Parry][;] . . . what other harm would [Parry] try to . . . pile on [him]?"  (*Id.*).

On cross-examination, Carlson testified that he did not grieve his assignment to the Utility Gang because "it would be redundant" since he had been reassigned from the Utility Gang two days after receipt of the assignment.  (Tr. 188).  In addition, Carlson testified that he told his counselor at Livingston about Parry's conduct and she told him that he could file a grievance.  (*Id.*).  According to Carlson, he did not file a grievance at that time because he had already stopped attending the AA meetings and because he was no longer assigned to the Utility

Gang.  (*Id.*).  Further, Carlson conceded that he filed grievances while at Livingston.  (*Id.*).

Carlson admitted that he filed a grievance on September 8, 2005 relating to the medical care for

his shoulder that he was receiving at Livingston.  (Tr. 188-90).  Carlson also testified that he

appealed the resolution of that grievance on September 23, 2005.  (Tr. 190-91).  Finally, Carlson

testified that Parry never discussed grievances with Carlson or used the term "grievance" in

Carlson's presence.  (Tr. 191).

Parry testified that inmates at Livingston were assigned to programming by a

majority vote of the program committee, which was comprised of himself and two other

Livingston employees.  (Tr. 257-58).  According to Parry, the medical department, not the

program committee, determined whether a particular inmate was physically capable of

performing tasks required by particular work assignments.  (Tr. 266).  The medical department

communicated its determination to the program committee through the use of a "Medical

Clearance Form."  (*Id.*).

Parry testified that he had a vague recollection of his interactions with Carlson.

(Tr. 267, 289).  According to Parry, he recalled that during the program committee meeting,

Carlson appeared "very angry, very resentful, and appeared to be quite adamant that he really was

not capable of doing programs."  (Tr. 278).  According to Parry, he recommended drug and

alcohol counseling for Carlson based upon Carlson's history of driving while intoxicated

convictions.  (Tr. 279).  Parry also likely suggested that Carlson be assigned to work in the mess

hall because Carlson's medical clearance form indicated that he was cleared for that assignment.

(Tr. 279-80; Defendant's Exhibit 400).  According to Parry, although the medical clearance form

restricted Carlson from climbing stairs and ladders, reaching, bending, jumping and contact sports, the form indicated that Carlson was eligible to work in the mess hall. (Tr. 281).

Parry disputed that he made the statements about which Carlson testified. Although Parry conceded that he likely told Carlson that he had 30 days to obtain a medical clearance and he likely suggested that Carlson attend AA and NA meetings, Parry testified that he did not believe that he used the term "bullshit" and that he would not have ordered Carlson to attend AA or NA because he was not authorized to order an inmate to attend those programs. (Tr. 283-84, 288, 301-03). In addition, Parry denied that he ever threatened Carlson that if he did not attend the meetings Parry would "stick so many programs so far up your ass that you won't be able to sit down and visit with your [mother] when she comes to visit you." (Tr. 287). Finally, Parry testified that he had a very vague recollection regarding a second interaction with Carlson. (Tr. 289, 293-94, 305).

## DISCUSSION

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Kogut v. Cnty. of Nassau*, 2013 WL 3820826, *2 (E.D.N.Y. 2013) (internal quotation omitted). Grounds for granting a new trial include substantial errors in the admission or exclusion of evidence or in charging the jury or where the verdict was against the weight of the

evidence. *See Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634 (2d Cir.), *cert. denied*, 536 U.S. 958 (2002); *Ishay v. City of New York*, 158 F. Supp. 2d 261, 263 (E.D.N.Y. 2001).

Whether to grant a new trial "is committed to the discretion of the trial judge." *Snyder v. Shenendehowa Cent. Sch. Dist.*, 2011 WL 705151, *3 (N.D.N.Y. 2011), *aff'd*, 486 F. App'x 176 (2d Cir.), *cert. denied*, 133 S. Ct. 653 (2012). On a motion for a new trial, the judge "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner," and "a new trial may be granted even if there is substantial evidence to support the jury's verdict." *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992). Thus, the court "has significant discretion in deciding whether to grant a Rule 59 motion for a new trial." *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 425 (S.D.N.Y. 2008).

"Despite this liberality, however, [a] court should only grant a new trial when a jury's verdict is egregious." *Kogut v. Cnty. of Nassau*, 2013 WL 3820826 at *2 (internal quotation omitted) (alteration in original). Thus, a court should not grant a new trial "unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988). Further, "trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, . . . and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir.) (internal quotation and citation omitted), *cert. denied*, 133 S. Ct. 789 (2012).

# I.  **Evidentiary Ruling**

I turn first to Carlson's argument that the Court improperly excluded his proposed testimony concerning acts of retaliation that had been visited upon other inmates by other corrections officers.  Carlson contends that the exclusion of the testimony was error and affected his substantial rights.  Parry disagrees, contending that Carlson failed to preserve his objection and that, in any event, any error was harmless.

## A.  **Offer of Proof**

Rule 103 of the Federal Rules of Evidence provides that in order to preserve a claim of error resulting from a court's exclusion of evidence during a trial, a party must "inform[] the court of [the] substance [of the evidence] by an offer of proof, unless the substance was apparent from the context."  Fed. R. Evid. 103(a)(2).  "[A]n offer of proof is not an absolute prerequisite in every appeal from the exclusion of evidence."  *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 151 (2d Cir. 2010) (internal quotation omitted), *cert. denied*, 131 S. Ct. 1602 (2011).  Rather, "[t]he purpose of th[e] requirement is to alert the [trial] court and opposing counsel to the thrust of the excluded evidence, enabling them to take appropriate action, and to construct a record appropriate for appellate review."  *United States v. Sheffield*, 992 F.2d 1164, 1169 (11th Cir. 1993) (internal quotation omitted).

During the trial, Carlson's counsel alerted the Court to the evidentiary issue that is now the subject of Carlson's challenge and explained the substance of the proposed testimony. The Court, counsel for Carlson and counsel for Parry engaged in a colloquy about the proposed testimony, following which the Court determined that the testimony should be excluded. Further, during oral argument on this post-trial motion, counsel for Carlson made a formal offer

of proof and, while conceding that some of the testimony concerned statements that other inmates made to Carlson, he stated that some related to Carlson's personal observations. Although the question of whether Carlson properly preserved the issue for review is a close one, *see*, *e.g.*, *Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1147 (10th Cir. 2009) ("merely telling the court the content of . . . proposed testimony is not an offer of proof[;] . . . [i]nstead, the proponent must describe the evidence and what it tends to show and . . . identify the grounds for admitting the evidence") (internal quotations and citations omitted); *United States v. Adams*, 271 F.3d 1236, 1241-42 (10th Cir. 2001) ("[a]n offer of proof of testimony by counsel is the least favored method because of its potential to fall short of the standard required by the rules . . . [;] [s]pecificity and detail are the hallmarks of a good offer of proof" and an offer of proof should provide both "the significance of the proposed evidence" and the grounds for its admissibility), *cert. denied*, 535 U.S. 978 (2002); *Moore v. City of Clarksville*, 2011 WL 5117776, *9 (M.D. Tenn. 2011) ("it was clear what the proposed witnesses would allegedly testify to in light of the repeated and extended discussion about the proposed testimony throughout the trial[;] . . . an offer of proof can take the form of a summary"), for the reasons discussed below, the claimed error does not warrant a new trial.

### B.  Exclusion of Testimony

"It is well-established that a trial court has considerable discretion in determining whether to admit or exclude evidence."  *Gavenda v. Orleans Cnty.*, 2000 WL 1375590, *7 (W.D.N.Y. 2000) (citing *Barrett v. Orange Cnty. Human Rights Comm'n*, 194 F.3d 341, 346 (2d Cir. 1999)).  Rule 61 of the Federal Rules of Civil Procedure provides that "no error in admitting or excluding evidence . . . is ground for granting a new trial[;] . . .[a]t every stage of the

proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. Accordingly, an evidentiary ruling, even if erroneous is not grounds for a new trial unless the ruling affected the movant's substantial rights. *Id.*

"Whether an evidentiary error implicates a substantial right depends on 'the likelihood that the error affected the outcome of the case.'" *Tesser v. Bd. of Educ. of City Sch. Dist. of New York*, 370 F.3d 314, 319 (2d Cir. 2004) (quoting *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993)). Accordingly, "an evidentiary error in a civil case is harmless 'unless [the movant] demonstrates that it is likely that in some material respect the factfinder's judgment was swayed by the error.'" *Id.* (quoting *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000). Thus, "[t]he moving party has the burden of showing that it is likely that in some material respect the factfinder's judgment was swayed by the error." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 119 (2d Cir. 2006) (internal quotation omitted).

As an initial matter, Carlson's argument that the Court erred in failing to allow him to testify about his knowledge of alleged retaliation inflicted upon other inmates by other officers is unavailing. Carlson argues that the testimony was relevant because it would have further supported Carlson's testimony that he did not grieve Parry's conduct because he was scared or intimidated. Carlson further argues that the testimony was necessary in order to permit the jury to properly assess whether an inmate who was similarly situated to Carlson would have been deterred from filing a grievance. I disagree.

The Prison Litigation Reform Act, 42 U.S.C. § 1997, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes." *E.g.*, *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Under limited circumstances, this exhaustion requirement may be excused. *See Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011). As relevant to this matter, the failure of an inmate to file an internal grievance may be excused where the inmate establishes that he was threatened and that the threat was "sufficient to render grievance procedures unavailable." *See id.* Whether a threat was sufficient to render grievance procedures unavailable involves an objective inquiry as to whether "a similarly situated individual of ordinary firmness would have deemed [the procedure] [un]available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004).

An inmate's allegations that he failed to file a grievance because of a generalized fear for his personal safety or of retaliation is insufficient to render the grievance procedures unavailable. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009); *see also Hurd v. Durrand*, 2013 WL 1192351, *11 (S.D. Fla.) (citing *Hemphill* and concluding that "[a]n expression of general fear on the part of an [inmate] that defendants might retaliate if he used a grievance procedure to complain, is not enough to make the grievance procedure unavailable"), *report and recommendation adopted*, 2013 WL 1192342 (S.D. Fla. 2013); *Howard v. Felton*, 2009 WL 331386, *1-2 (M.D. Ga. 2009) (recognizing that threats of retaliation may render the grievance procedure unavailable, but finding that "[p]laintiff makes no specific allegations of any retaliatory threats . . . [and] does not claim that [d]efendant or any other prison official made specific retaliatory threats"). The legal insufficiency of allegations of generalized fear is grounded in the recognition that "[i]f every plaintiff bringing a retaliation claim could have the

exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims." *Harrison v. Stallone*, 2007 WL 2789473, *6 (N.D.N.Y. 2007).

At trial, Carlson sought to bolster his testimony that Parry's statements and conduct caused him to believe he would be retaliated against for filing a grievance with testimony concerning his knowledge that other inmates had been retaliated against by other officers for filing grievances. If credited, such testimony might have suggested that Carlson had a generalized fear of retaliation – a proposition undermined by the fact that Carlson did file grievances during the relevant period – which is insufficient to excuse him from the exhaustion requirement. *See Brown v. Napoli*, 687 F. Supp. 2d 295 at 297 ("mere allegation of a generalized fear of retaliation is insufficient to excuse [inmate's] failure to file a grievance")*.* Thus, the testimony was properly excluded. *See also Nelson v. Butte Cnty. Sheriff's Dep't*, 2012 WL 812385, *9 (E.D. Cal.) (recognizing that an inmate's failure to grieve may be excused if the procedures are unavailable, but "the fact that [plaintiff] witnessed correctional staff abuse other inmates does not show that the grievance process was effectively unavailable"), *report and recommendation adopted*, 2012 WL 1194839 (E.D. Cal. 2012).

Even if the Court had erred by excluding Carlson's testimony, such error would not justify a new trial because Carlson has failed to establish that the exclusion of the testimony affected his substantial rights. As an initial matter, Carlson's motion is conclusory, fails to provide citations to any of the record evidence and fails to explain how the proposed testimony would have been otherwise admissible as non-hearsay. *See O'Hara v. McAvoy*, 2013 WL 4507067, *4 (E.D.N.Y. 2013) ("[d]efendant's brief fails to move beyond the issue of relevance to

demonstrate the full procedure through which the [excluded evidence] could have [been] admitted into evidence . . .[,] does not provide an exception to the hearsay rule, nor does he explain how [the excluded evidence] could have been authenticated . . . [and] has not identified any reason that the Court's prior ruling merits reconsideration[;] [thus,] [d]efendant has not met his burden of showing substantial errors were made in the exclusion of evidence so as to cause an unfair trial"); *Memorial Drive Consultants, Inc. v. ONY, Inc.*, 2001 WL 241781, *6 (W.D.N.Y. 2001) ("[i]n regard to objections to the [excluded] testimony . . . , plaintiff has not offered anything in support of its bare contention and, accordingly, th[e] Court finds such ground to be meritless"), *aff'd*, 29 F. App'x 56 (2d Cir. 2002). Further, for the reasons discussed in the next section, there was substantial evidence to support the jury's verdict, and I conclude that it is unlikely that the jury's verdict was swayed in some material respect by the exclusion of the testimony. *See O'Hara v. McAvoy*, 2013 WL 4507067 at *4 (new trial not warranted where movant failed to show that the exclusion of evidence affected his substantial rights by rendering the jury's verdict "seriously erroneous"); *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 2006 WL 1881744, *8 (S.D.N.Y. 2006) (document was properly excluded; "[p]laintiff has failed to establish that the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice . . . [where] [t]he jury's verdict . . . was reasonable in light of the evidence presented and the issues they were asked to resolve") (internal quotation and citation omitted), *aff'd*, 520 F.3d 109 (2d Cir. 2008). Accordingly, the exclusion of the proposed testimony does not warrant a new trial.

## II.  Weight of the Evidence

Rule 59(a) authorizes a court to grant a new trial if the verdict is against the weight of the evidence.  *See Raedle v. Credit Agricole Indosuez*, 670 F.3d at 417.  "A decision is against the weight of the evidence if and only if the verdict is seriously erroneous or a miscarriage of justice."  *Id.* (alterations omitted) (quoting *Farrior v. Warterford Bd. of Educ.*, 277 F.3d at 635).

In a conclusory, one paragraph section of his memorandum of law, Carlson argues that he is entitled to a new trial because the verdict was against the weight of the evidence. (Docket # 88-2 at 5).  According to Carlson, it was unreasonable for the jury to conclude that "a person in Carlson's weakened position, unable to walk away, unable to say no, unable to get his own medical care, vulnerable to cruelty and vindictiveness of Mr. Parry, would have submitted himself and his body to such torture without having been ordered to do so; and that he would be afraid of the person who issued such an order."  (*Id.*).  As an initial matter, Carlson's conclusory assertions are insufficient to meet his burden of establishing that the verdict was either seriously erroneous or a miscarriage of justice.  *See O'Connell v. Onondaga Cnty.*, 2013 WL 998598, *2 (N.D.N.Y. 2013) ("[p]laintiff simply casts his disagreement with the verdict in a vague and conclusory fashion, offering nothing more than general references to testimony and evidence in the record").

In any event, the jury's verdict depended, in large part, on an evaluation of the witnesses' testimony.  The parties presented the jury with significantly different versions of their interactions.  Carlson testified that Parry spoke to him in an abusive and threatening manner.  In addition, Carlson contended that Parry directed Carlson to attend AA and NA meetings despite

19

knowing that Carlson would be required to walk 1400 yards several times each week in order to do so.  Finally, Carlson testified that Parry assigned him to the Utility Gang one day after observing Carlson in a wheelchair and learning that Carlson had not been attending AA meetings.  In contrast, Parry denied using the language described by Carlson and denied ordering Carlson to attend AA and NA meetings.  Further, Parry testified that assignments could not be made by him alone, but had to be approved by the program committee.

Considering this conflicting testimony, the issue of whether a reasonable inmate would have been intimidated from filing a grievance turned in large measure on which testimony the jury credited.  Under these circumstances, I decline to disturb the jury's credibility determination.  *See Raedle*, 670 F.3d at 418-19 ("where, as here, a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice"); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 2013 WL 3820671, *19 (E.D.N.Y. 2013) ("[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial") (alteration in original) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992), *cert. denied*, 508 U.S. 952 (1993), *abrogated on other grounds*, *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)); *O'Connell v. Onondaga Cnty.*, 2013 WL 998598 at *2 ("[t]he [c]ourt . . . declines to disturb the verdict and defers to the jury's interpretation of the evidence and assessment of the testimony").

After reviewing the trial evidence, I find that substantial evidence exists to support the jury's verdict that an inmate of ordinary firmness under Carlson's circumstances

would not have found that Parry's statements or conduct "amounted to threats or intimidation that would have . . . deterred [such inmate] from filing a grievance." (Docket # 80). In addition to the conflicting versions of events presented by Carlson and Parry, which the jury was free to accept or reject as they saw fit, some of Carlson's testimony itself undercut his contention that he was too intimidated to file a grievance. First, he conceded that Parry never directly threatened him regarding the grievance procedures or ever even mentioned the word "grievance" during their interactions. *See Snyder v. Whittier*, 428 F. App'x at 91 ("[plaintiff] fails to allege any specific threats related to the grievance procedures"); *Hurd v. Durrand*, 2013 WL 1192351 at *12 (citing *Hemphill* and concluding grievance procedures were available to inmate even where corrections officer told inmate "you lucky I wasn't there cause I would've beat your ass too[;] . . . such a statement by [the corrections officer], without more, does not suffice as a threat of the kind contemplated by the Courts"); *Ory v. McHugh*, 2008 WL 2756463, *5 (N.D. Fla. 2008) (citing *Hemphill* and concluding "[t]he context of [the defendant's] statement demonstrates that the threat to 'lock up' plaintiff related to plaintiff's questioning of him further about his diagnosis, not filing an administrative grievance"). Further, Carlson testified that he told his counselor at Livingston about Parry's conduct. *See Snyder*, 428 F. App'x at 91 (inmate's allegations of fear of retaliation undercut where inmate complained to another corrections officer, to his physician and wrote a letter to a corrections officer at another facility); *Black v. Fischer*, 2013 WL 1314940, *9 (S.D.N.Y. 2013) ("the fact that [p]laintiff complained to someone . . . demonstrates that he was not sufficiently frightened by the threat to refrain from complaining, which cuts against a finding that it was sufficiently serious to justify [p]laintiff's failure to avail himself of the [grievance procedures]").

Finally, Carlson admitted that he filed a grievance regarding his medical care after his first meeting with Parry, but before he received his Utility Gang assignment, and that he subsequently appealed the grievance determination.  *See*, *e.g.*, *Singh v. Lynch*, 460 F. App'x 45, 48 (2d Cir. 2012) (affirming summary judgment where plaintiff filed a grievance alleging similar misconduct against different corrections officials approximately one month later); *Mateo v. Ercole*, 2010 WL 3629520, *4 (S.D.N.Y. 2010) ("[plaintiff] purports to have been too fearful to exhaust his remedies, [but] he actually filed grievances regarding the September incidents[;] . . . [s]uch action is inconsistent with an assertion that fear rendered the grievance process unavailable to [plaintiff] let alone to one of 'ordinary firmness'"); *Murray v. Palmer*, 2010 WL 1235591, *5 (N.D.N.Y. 2010) (plaintiff failed to exhaust where he filed at least three other grievances during the same time period); *Harrison v. Goord*, 2009 WL 1605770, *6 (S.D.N.Y. 2009) ("[plaintiff] continued to file grievance after grievance during the same period of time when he was allegedly being threatened and harassed and his mail was allegedly being tampered with"; thus, "it is apparent that a reasonable person of ordinary firmness in [plaintiff's] position . . . would not have thought that administrative remedies were unavailable"); *Winston v. Woodward*, 2008 WL 2263191, *8 (S.D.N.Y. 2008) ("[a]lthough [p]laintiff alleges that [d]efendants' threats and retaliation prevented him from appealing his grievance, he . . . filed an 'appeal' using the Inmate Grievance Complaint form, . . . thus undercutting his claims that an appeal was functionally unavailable to him"); *Amador v. Superintendents of the Dep't of Corr. Servs.*, 2007 WL 4326747, *8 (S.D.N.Y. 2007) ("the fact that three of the [p]laintiffs filed formal grievances directly cuts against [p]laintiffs' argument that the process is unavailable to victims of sexual abuse[;] . . . [m]oreover, every [p]laintiff complained in some way or another about the

abuse"), *dismissed in part, and vacated and remanded in part sub nom.*, *Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011).

        Viewing the totality of the evidence, I conclude that the jury's verdict was neither seriously erroneous nor a miscarriage of justice. *See O'Connell*, 2013 WL 998598 at *2-3 (upholding verdict where "a review of the evidence that the parties adduced at trial overwhelmingly supports the jury's verdict"); *Densberger v. United Techs. Corp.*, 125 F. Supp. 2d 585, 597-98 (D. Conn. 2000) (upholding verdict where a review of the evidence failed to persuade the court that "the jury reached a seriously erroneous result or that the verdict [was] a miscarriage of justice"), *aff'd*, 297 F.3d 66 (2d Cir. 2002), *cert. denied*, 537 U.S. 1147 (2003).


## CONCLUSION

        For the reasons stated above, Carlson's motion for a new trial (**Docket # 88**) is **DENIED**.

**IT IS SO ORDERED.**


                                      *s/Marian W. Payson*
                                         MARIAN W. PAYSON
                                    United States Magistrate Judge

Dated: Rochester, New York
        September   24  , 2012